<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SCOTT ILLIANO,<br><br>        Plaintiff,<br><br>v.<br><br>WAYNE BOARD OF EDUCATION, et al.,<br><br>        Defendants. | Civil Action No. 22-00114 (SDW)(JBC)<br><br><br>**OPINION**<br><br><br>September 30, 2022 |

**WIGENTON**, District Judge.

Before this Court is Defendants' Wayne Board of Education ("BOE"), Michael Rewick ("Principal Rewick"), Mark Toback ("Superintendent Toback"), Jeff DiLollo ("Assistant Principal of Athletics DiLollo"), Catherine Kazan ("BOE President Kazan"), Pam O'Mealy ("Booster Club President O'Mealy"), Melissa Casamassina ("Booster Club VP Casamassina"), and Katherine D'Agati ("Booster Club Secretary D'Agati") (collectively, "Defendants") Motion to Dismiss (D.E. 4) Plaintiff Scott Illiano's ("Plaintiff") Complaint (D.E. 1–1 ("Compl.")) pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Jurisdiction is proper pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. §§ 1441(a) and 1445(a). This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated below, Defendants' Motion to Dismiss is **GRANTED.**

    I.    <u>**BACKGROUND AND FACTUAL HISTORY**</u>

Plaintiff was hired as the head baseball coach for the Wayne Hills High School ("WHS") baseball team in November 2017. (Compl. at ¶ 14.) At the time of his hire, the former athletic

1

director advised Plaintiff that he could subsidize his coaching staff and request equipment purchases through the Wayne Hills Booster Club ("Booster Club") (Compl. at ¶ 19.) Within a few days, Plaintiff met with the Booster Club to provide his 12-month plan to rejuvenate the baseball program and request that the Booster Club raise funds to pay for assistant coaches. (Compl. at ¶¶ 25–26.)

From the start of his coaching position at WHS through January 2021, Plaintiff alleges that he had several issues with the Booster Club, including, but not limited to, "issues with requesting equipment purchases and other team-related expenses[;]" witnessing the Booster Club violate rules and regulations; and facing growing animosity from the Booster Club at every turn. (*See generally* Compl; *see also* Compl. at ¶ 28.) Plaintiff contends that he made numerous complaints to Assistant Principal of Athletics DiLollo and the BOE regarding the conduct of the Booster Club. (*See generally* Compl.) For example, in January 2018, Plaintiff became aware that the reason for delays in receiving equipment purchases he requested was because the Booster Club Trustees implemented an anonymous voting system, which was not approved by the BOE and violated BOE policies. (Compl. at ¶ 29.) After discovering that the Booster Club by-laws were not approved by the BOE and in violation of BOE policies, Plaintiff raised his concerns at a Booster Club meeting and to Assistant Principal of Athletics DiLollo. (Compl. at ¶¶ 29–31, 36.)

Thereafter, from June 2018 through December 2020, Plaintiff alleges that the Booster Club continued to violate BOE policies, Executive Orders implemented by Governor Phil Murphy ("Executive Orders"), and New Jersey State Interscholastic Athletic Association ("NJSIAA") regulations. The Complaint, *inter alia*, sets forth the following incidents: alcohol was served at a June 2018 end of season team banquet purportedly held by the Booster Club in violation of BOE policies (Compl. at ¶ 40); the Booster Club engaged in secret voting, disputed Plaintiff's

2

fundraising efforts, delayed necessary equipment purchases, disregarded school rules, and berated WHS baseball coaches (Compl. at ¶¶ 50–60, 63); the Booster club planned a "covert meeting with Defendant DiLollo to lodge complaints" about the WHS baseball program and Plaintiff in September 2019 (Compl. at ¶ 70); the Booster Club gifted WHS senior players with $100 gift cards in violation of NJSIAA rules (Compl. at ¶ 128); and the Booster Club ignored requests to pay assistant coaches and held certain senior day events in violation of Executive Orders (Compl. at ¶¶ 129, 131.)  Plaintiff asserts he made multiple reports of these incidents to Assistant Principal of Athletics DiLollo and the BOE.  (Compl. at ¶¶ 58, 63–65, 74–75, 107, 132–134.)

During Booster Club elections in December 2020, Plaintiff alleges that Assistant Principal of Athletics DiLollo called Plaintiff regarding a book he wrote in 2011 about his time as a baseball coach.  (Compl. at ¶¶ 184, 186.)  Purportedly, Booster Club President O'Mealy, Booster Club VP Casamassina, and Booster Club Secretary D'Agati brought this book before the BOE and made allegations that Plaintiff had "some type of malice and ill will toward all booster clubs and was improperly attacking the Booster Defendants."  (Compl. at ¶¶ 185–186.)  In turn, Plaintiff alleges that "the Booster Defendants, [BOE President Kazan], and now [Superintendent Toback] were using the book for improper purposes to malign Plaintiff in an attempt to have him terminated from his coaching position."  (Compl. at 187.)  On December 10, 2020, Principal Rewick informed Plaintiff that the "Booster Defendants accused Plaintiff of improperly attempting to influence the election to try and get different people as Booster Officers."  (Compl. at ¶ 191.)  Thereafter, Plaintiff contends that Principal Rewick and Assistant Principal of Athletics DiLollo "changed their tone and flipped their position" on Plaintiff's situation; Principal Rewick attempted to substantiate the allegations of the Booster Club against Plaintiff; and the BOE directed Principal Rewick to go against Plaintiff.  (Compl. at ¶¶ 195–201.)

3

Shortly thereafter, Plaintiff received a "Rice notice" for a BOE meeting. The BOE meeting occurred, and Plaintiff was provided no information. (Compl. at ¶¶ 206–207.) On January 14, 2021, Plaintiff still received no information regarding his position, but found out that the BOE approved several coaches for spring. (Compl. at ¶ 208.) Despite "the School Defendants' [] retaliat[ion] against Plaintiff," Plaintiff re-applied for the head baseball coach position. (Compl. at ¶ 210.) Assistant Principal of Athletics DiLollo allegedly informed Plaintiff that "if Plaintiff does not get terminated, the assistant coaches will not get paid their stipends." (Compl. at ¶ 217.) On January 19, 2021, Plaintiff was terminated as head coach of the WHS baseball team. (Compl. at ¶ 219.)

On January 10, 2022, Plaintiff initiated this action against Defendants asserting eight counts: (1) 42 U.S.C. § 1983; (2) New Jersey Conscientious Employee Protection Act ("CEPA"); (3) wrongful termination; (4) First Amendment Retaliation; (5) civil conspiracy; (6) tortious interference with economic advantage; (7) false light; and (8) defamation. Defendants moved to dismiss Counts Two, Three, Four, Five, Six, Seven, and Eight of the Complaint. (D.E. 4.) All briefing has been timely submitted. (D.E. 8, 9.)

## II.  LEGAL STANDARD

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

In considering a motion to dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) (discussing the *Iqbal* standard). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

### III.  DISCUSSION

#### A.  Count Two (CEPA) Against Defendants

CEPA prohibits employers from taking retaliatory action against an employee who reports on suspected illegal activity. N.J.S.A. 34:19-3. "However, CEPA only prohibits retaliatory action against employees by their employers." *Figueroa v. City of Camden*, 580 F. Supp. 2d 390, 406 (D.N.J. 2008). The purpose of CEPA is to prevent retaliatory action by an employer against an employee who "blow[s] the whistle on organizations engaged in illegal or harmful activity." *Young v. Schering Corp.,* 141 N.J. 16, 23, 660 A.2d 1153, 1157 (1995). Protected employee whistleblowing under CEPA is limited to whistleblowing regarding activities, policies, or practices of "employers." N.J.S.A. § 34:19–1. CEPA defines "employer" as the following:

> [A]ny individual, partnership, association, corporation or any person or group of persons acting directly or indirectly on behalf of or in

> the interest of an employer with the employer's consent and shall include all branches of State Government, or the several counties and municipalities thereof, or any other political subdivision of the State, or a school district, or any special district, or any authority, commission, or board or any other agency or instrumentality thereof.

N.J.S.A. § 34:19–2(a).

To state a CEPA claim, a plaintiff must plead the following: (1) he reasonably believed defendants were violating a law, rule, or public policy; (2) that he performed a whistleblowing activity as defined by N.J.S.A. 34:19–3; (3) that an adverse employment action was taken against him; and (4) that a causal relationship exists between the whistleblowing activity and the adverse employment action. *Puglia v. Elk Pipeline, Inc.*, 226 N.J. 258, 280 (2016). The New Jersey Supreme Court has held that, in CEPA actions, "the employer is the party with the power and responsibility to hire, promote, reinstate, provide back pay, and take other remedial action." *Abbamont v. Piscataway Twp. Bd. of Educ.*, 650 A.2d 958, 964 (N.J. 1994). It is well-established that CEPA's protection does not extend to reports alleging the misconduct of non-employers. *See, e.g.*, *Eke v. Maxim Healthcare Service, Inc.*, 2013 WL 1952459, at *2–4 (D.N.J. May 9, 2013) (dismissing Plaintiff's CEPA claim because the misconduct alleged was not carried out on behalf of or in the interest of her employer or some other party that her employer had a business relationship with. Rather, the misconduct alleged was carried out by a third party.); *Blackburn v. United Parcel Serv., Inc.*, 3 F.Supp.2d 504, 512 (D.N.J. 1998), *aff'd* 179 F.3d 81 (3d Cir. 1999) (CEPA was enacted to protect from retaliatory action employees who "blow the whistle" on employers engaged in illegal or harmful activity); *see also Fleming v. Correctional Healthcare Sols., Inc.,* 164 N.J. 90, 751 A.2d 1035 (N.J. 2000) (purpose of CEPA is to protect employees who report illegal and unethical workplace activities and to discourage employers from engaging in such conduct).

6

CEPA may "create[ ] *individual* liability for agents of the employer, including supervisory employees" *Palladino ex rel. U.S. v. VNA of S. New Jersey, Inc.*, 68 F. Supp. 2d 455, 4731–72 (D.N.J. 1999) (emphasis added), because CEPA imposes liability on those that act "directly or indirectly on behalf of or in the interest of an employer with the employer's consent." N.J.S.A. § 34:19–2(a).  The New Jersey Supreme Court determined that "with the employer's consent" reflects normal agency respondeat superior principles such that both employers and employers' agents could be held liable for retaliation.  *Palladino*, 68 F. Supp. 2d at 471–72 (citing *Abbamont*, 650 A.2d at 968)).  Thus, Plaintiff must plead sufficient facts to support a theory of agency liability against an employer's agents to state a viable claim under CEPA.  *See Beu v. City of Vineland*, 2020 WL 7418007, at *11-12 (D.N.J. Dec. 18, 2020) (denying Plaintiff's, the Chief of Police for the Vineland City Police Department, CEPA claim against a private attorney retained by the City of Vineland because Plaintiff failed to allege sufficient facts to support a theory of agency liability that the attorney was an "agent" of the City of Vineland).

Here, the Complaint fails to allege sufficient facts to support a theory of agency liability under CEPA.  The crux of Plaintiff's Complaint relates to conduct of the Booster Club, not the BOE.  (*See generally* Compl.)  Plaintiff contends that the BOE, BOE President Kazan, Principal Rewick, Assistant Principal of Athletics DiLollo, and Superintendent Toback retaliated against Plaintiff after he reported the Booster Club violated Executive Orders, NJSIAA regulations, and BOE policies.  (Compl. at ¶¶ 210, 240, 245.)  Plaintiff argues that the Booster Club is an agent of the BOE and subject to liability as an "agent" under CEPA.  (Compl. at ¶¶ 16–18.)  While this could be true, the Complaint fails to allege sufficient facts to establish agency liability under CEPA.  The Complaint's only support for agency liability is that: "the Booster Club is an entity that is organized for the purpose of endorsing and supporting the baseball program at WHS"; the

7

"Booster Club paid stipends to the coaches"; the Booster Club offers support and resources in support of the baseball program at WHS; and the Booster Club votes on certain issues related to the baseball program at WHS. (Compl. at ¶¶ 7, 92, 31, 34.)[1]

As pled, the Complaint fails to set forth facts demonstrating that the BOE vested with the Booster Club the authority to act in a supervisory position or otherwise act as an agent on behalf of the BOE. (*See generally* Compl.) The Complaint does not set forth facts establishing that the Booster Club carried out its actions on behalf of or in the interest of Plaintiff's employer or some other party that Plaintiff's employer had a business relationship with. (*Id.*) Based on these allegations alone, this Court cannot find that the Booster Club was in a supervisory position or acting on behalf of the BOE with the BOE's consent. (*Id.*) Plaintiff has failed to allege that his employer, the BOE, engaged in any conduct that violated a law, rule, regulation, or clear public policy. (*Id.*) Without more, Plaintiff's claim under CEPA fails and Count Two is therefore dismissed.

### B. Count Three (*Pierce* Claim) Against Defendants

In Count Three, Plaintiff asserts wrongful termination in violation of New Jersey common law under *Pierce v. Ortho Pharmaceutical Corp.*, 417 A.2d 505 (N.J. 1980). (*See* Compl. at ¶¶ 249–255.) Count Three alleges that it is "against public policy of the State of New Jersey for a staff member to be terminated for raising unlawful conduct by a booster club who is supposed to be a pathway to help Defendant Board's sports teams." (Compl. at ¶ 252.) Defendants move to dismiss Plaintiff's *Pierce* claim on the basis that the Complaint does not allege any objectionable conduct by his employer that violates a clear mandate of public policy. (D.E. 4-1 at 15–17.)

---

[1] Plaintiff attached to his Opposition Brief, Wayne Township Board of Education District Policy 9191- Booster Clubs (Exhibit B) and WHS Booster Club Bylaws (Exhibit G). (*See* D.E. 8-2.)

In *Pierce*, the New Jersey Supreme Court explained that "an employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy." *Pierce*, 417 A.2d at 512. Thus, an employee who is wrongfully discharged may maintain an action in tort "based on the duty of an employer not to discharge an employee who refused to perform an act that is a violation of a clear mandate of public policy." *Id.* "To establish a case for common law wrongful discharge, the employee must identify the clear mandate of public policy and that the discharge itself was in violation of that public policy." *Myers v. Advanced Stores Co.*, Civ. No. 19–18183, 2020 WL 2744632, at *6 (D.N.J. May 27, 2020) (citing *Tartaglia v. UBS PaineWebber Inc.*, 961 A.2d 1167, 1183 (N.J. 2008). With respect to the first requirement, the New Jersey Supreme Court has also explained that "sources of public policy include legislation; administrative rules, regulations or decisions; and judicial decisions." *Pierce*, 417 A.2d at 512. Ultimately, "a 'clear mandate of public policy' must be one that on balance is beneficial to the public." *Hennessey v. Coastal Eagle Point Oil Co.*, 609 A.2d 11, 15 (N.J. 1992).

Critically, "more is needed than simply the breach of public policy affecting a single person's rights to constitute the breach of a 'clear mandate' of public policy that *Pierce* requires." *Hennessey*, 609 A.2d at 19–20. A plaintiff must "prove not only that he or she complained about a[n employer's] policy, but that his or her resulting discharge violated a clear mandate of public policy." *Tartaglia*, 961 A.2d at 1184–1185.) As such, "[i]f an employee does not point to a clear expression of public policy, the court can grant a motion to dismiss or for summary judgment." *Pierce*, 417 A.2d at 513.

Here, Plaintiff's *Pierce* claim fails for the same reasons identified by this Court on Plaintiff's CEPA claim in Count Two. Plaintiff's Complaint does not allege any objectionable conduct by his employer. Rather, the Complaint sets forth that the Booster Club violated Executive

9

Orders, NJSIAA regulations, and BOE policies. (Compl. at ¶¶ 29–31, 40, 50–60, 63, 128, 129, 131.) Without citing to a specific policy, statute, or regulation, Plaintiff alleges it is "against public policy of the State of New Jersey for a staff member to be terminated for raising unlawful conduct by a booster club [which] is supposed to be a pathway to help Defendant Board's sports teams." (Compl. at ¶ 252.) Plaintiff has not alleged that he objected to any "clear mandate of public policy" of the BOE or that the BOE terminated him in violation of a "clear mandate of public policy." It is indisputable that *Pierce* requires Plaintiff to identify a "clear mandate of public policy" by his employer, object to his employer's policy, and be discharged in violation of a clear mandate of public policy. *Myers*, 2020 WL 2744632, at *6. Without following the requirements of *Pierce*, Plaintiff's claim fails. Count Three is therefore dismissed.[2]

### C. Count Four (First Amendment Retaliation) Against Defendants Principal Rewick and Assistant Principal of Athletics DiLollo

In evaluating a public employee's retaliation claim for engaging in protected First Amendment activity, the court must undergo a three-step process. *Baldassare v. New Jersey,* 250 F.3d 188, 194 (3d Cir. 2001). "[A] public employee must show that (1) his speech is protected by the First Amendment and (2) the speech was a substantial or motivating factor in the alleged retaliatory action, which, if both are proved, shifts the burden to the employer to prove that (3) the same action would have been taken even if the speech had not occurred." *Dougherty v. School Dist. of Philadelphia*, 772 F.3d 979, 986 (3d Cir. 2014) (citing *Gorum v. Sessoms,* 561 F.3d 179, 184 (3d Cir. 2009)).

Here, the Complaint fails to set forth sufficient facts demonstrating that Principal Rewick and Assistant Principal of Athletics DiLollo were personally involved in Plaintiff's termination.

---

[2] Plaintiff can only maintain a *Pierce* claim against his employer, not individual employees. *See O'Lone v. New Jersey Dept. of Corrections*, 313 N.J.Super. 249, 256 (N.J. App. Div. 1998) (a *Pierce* cause of action is brought against the public entity and not the individual defendants.)

(Compl. at ¶ 184–219.)  Critically, Plaintiff fails to point to any fact directly linking Principal Rewick and Assistant Principal of Athletics DiLollo to the alleged retaliatory actions.  Rather, Plaintiff asserts baldly that Principal Rewick and Assistant Principal of Athletics DiLollo "played a role in Plaintiff's termination."  (D.E. 8 at 38.)  While Plaintiff alleges a litany of facts concerning his termination, none of the facts alleged demonstrate that Principal Rewick and Assistant Principal of Athletics DiLollo were involved in the alleged retaliatory conduct.  (Compl. at ¶ 184–219.)  For example, Plaintiff alleges, *inter alia*, that "[i]t became clear that Defendant Rewick and Defendant DiLollo had changed their tone and flipped their position on the entire situation, making Plaintiff the scapegoat"; Principal Rewick and Assistant Principal of Athletics DiLollo "were catering to the Booster Defendants who knew they were lying"; and Assistant Principal of Athletics DiLollo advised Plaintiff that "no decision was made as to Plaintiff's coaching position," and that if Plaintiff was not terminated, the assistant coaches would not get paid.  (Compl. at ¶¶ 194–204.)  These allegations alone do not rise to the level of a First Amendment retaliation claim.  Accordingly, Plaintiff's First Amendment retaliation claim is dismissed.

  **D. Count Five (Civil Conspiracy) Against Defendants**

Count Five of the Complaint raises a claim for civil conspiracy, alleging that "Defendants engaged in a concerted and cooperative effort to harm and/or destroy Plaintiff's reputation in the public and to the Defendant Board in order to justify terminating Plaintiff from his coaching position as the Boys' Head Varsity Baseball coach."  (Compl. at ¶ 265–267.)  To state a claim for conspiracy under New Jersey law, a plaintiff must plead (1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, and (4) proof of special damages.  *Cevdet Aksut Ogullari Koll. Sti v. Cavusoglu*, No. 14-

3362, 2018 WL 585542, at *4 (D.N.J. Jan. 29, 2018), *aff'd sub nom. Cevdet Aksut Ve Ogullari Koll. Sti v. Cavusoglu*, 756 F. App'x 119 (3d Cir. 2018).

Here, the Complaint sets forth only the most general and conclusory statements to support Plaintiff's conspiracy claim. Although Plaintiff broadly alleges that Defendants "engaged in a concerted and cooperative effort," engaged in "conspiracy to have Plaintiff terminated from his head baseball coaching position," and agreed to "ma[ke] defamatory and false allegations as to Plaintiff's character to place him in a false light," the Complaint does not contain any factual support for those assertions. (Compl. at ¶¶ 265–268.) It does not articulate how, where, or when the Defendants entered into their alleged agreement, and only broadly speculates as to why they may have cooperated to make "defamatory and false allegations as to Plaintiff's character" to terminate him. (Compl. at ¶¶ 265–268.) Further, to the extent that Plaintiff's conspiracy claim is based on Plaintiff's discussion with Principal Rewick, wherein Principal Rewick advised Plaintiff that the Booster Club "accused Plaintiff of improperly attempting to influence the election to try and get different people as Booster officers," Plaintiff's conspiracy claim fails. (Compl. at ¶ 191.) Such allegations do not demonstrate that the Defendants conspired to fabricate or exaggerate this story to have Plaintiff terminated. As such, the Complaint fails to set forth specific allegations establishing the existence of a civil conspiracy claim. Therefore, Count Five will be dismissed.

E. **Count Six (Tortious Interference with Economic Advantage) Against Defendant BOE President Kazan**

Plaintiff raises a tortious interference claim against BOE President Kazan alleging that her "statements and actions . . . were specifically made in order to ensure Plaintiff was terminated from his coaching position."[3] (Compl. at ¶ 275.) To state a claim under New Jersey law for tortious

---

[3] Plaintiff's tortious interference with economic advantage claims against the other Defendants are not the subject of this motion.

12

interference with prospective economic advantage, a plaintiff must allege: (1) the existence of a reasonable expectation of an economic advantage; (2) the interference was done intentionally and with malice; (3) absent the interference, there was as reasonable probability that the plaintiff would have received the anticipated economic benefits, and (4) the injury caused the damage. *MacDougall v. Weichert*, 677 A.2d 162, 174 (N.J. 1996) (citation omitted). "[I]t is 'fundamental' to a cause of action for tortious interference with a prospective economic relationship that the claim be directed against defendants who are not parties to the relationship." *Printing Mart-Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 752 (N.J. 1989) (citing *Sivell v. Conwed Corp.,* 605 F. Supp. 1265, 1268 n.4 (D. Conn. 1985)). Significantly, a tortious interference claim is designed "to protect parties to an existing or prospective contractual relationship from **outside interference**." *Id.* (emphasis added).

It is indisputable that BOE President Kazan was the BOE President and acted on behalf of the BOE at all relevant times in this matter. Plaintiff had an economic relationship with the BOE, as Plaintiff was employed with the BOE. Thus, Plaintiff's tortious interference claim cannot be directed at BOE President Kazan because she was acting on behalf of the BOE. Accordingly, Count Six against BOE President Kazan is dismissed.

**F. Count Seven (False Light) Against Defendants BOE President Kazan, Booster Club President O'Mealy, Booster Club VP Casamassina, and Booster Club Secretary D'Agati**

Plaintiff raises a false light claim against BOE President Kazan, Booster Club President O'Mealy, Booster Club VP Casamassina, and Booster Club Secretary D'Agati alleging that their statements and actions irreparably damaged Plaintiff's reputation. (Compl. at ¶¶ 280–285.) To state a claim of false light under New Jersey law, a plaintiff must allege that (1) "the false light in which [she] was placed would be highly offensive to a reasonable person" and (2) the defendant

13

had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the [plaintiff] would be placed." *Edmond v. Plainfield Bd. of Educ.*, 171 F. Supp. 3d 293, 315 (D.N.J. 2016) (alteration in original) (quoting *Durando v. Nutley Sun*, 37 A.3d 449, 458 (N.J. 2012)).

Here, Plaintiff's claim rests solely on the conclusory allegation that Defendants made statements that "intentionally misrepresented Plaintiff's character in a way that they knew Plaintiff would reasonably be justified in the eyes of the community in feeling seriously offended and aggrieved by such publicity." (Compl. at ¶¶ 280–285.)  To state a claim of false light, Plaintiff must, at the very least, identify the publicized statements that were made and identify which Defendants made the publicized statements.  Because even the most basic elements of a false light claim have not been alleged, this claim is dismissed.[4]

### G. Count Eight (Defamation) Against Defendants BOE President Kazan, Booster Club President O'Mealy, Booster Club VP Casamassina, and Booster Club Secretary D'Agati

Plaintiff raises a defamation claim against BOE President Kazan, Booster Club President O'Mealy, Booster Club VP Casamassina, and Booster Club Secretary D'Agati.  (Compl. at ¶¶ 290–294.)

To state a claim for defamation under New Jersey law, the plaintiff must allege: (1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher. *Ross v. Bd. of Educ. Greater Egg Harbor Reg'l High Sch. Dist.*, 658 F. App'x 97, 100 (3d Cir.

---

[4] Plaintiff has also failed to establish the publicity element of a false light claim.  "'Publicity' . . . means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge . . . Thus it is not an invasion of the right to privacy . . . to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons." *McNemar v. Disney Store, Inc.*, 91 F.3d 610, 622 (3d Cir. 1996).  The Complaint is absent of any allegations that the Booster Club publicized any statement to third parties or the public at large.

2016) (quoting *DeAngelis v. Hill*, 180 N.J. 1, 13, 847 A.2d 1261, 1267–68 (N.J. 2004)).  A defamatory statement is one that is false and injurious to a party's reputation. *Taj Mahal Travel, Inc. v. Delta Airlines Inc.*, 164 F.3d 186, 189 (3d Cir. 1998).  A plaintiff must plead "when, where, by which defendants and by what words, written or oral, plaintiff was defamed." *Zoneraich v. Overlook Hosp.,* 212 N.J. Super. 83, 514 A.2d 53, 62 (N.J. Super. Ct. App. Div. 1986).  Complaints that vaguely allege that defamatory statements were made to "third parties" are insufficient. *See Foy v. Wakefern Food Corp.,* Civ. No. 09-1683, 2010 WL 147925, at *6 (D.N.J. Jan. 7, 2010) (complaint alleging defamatory statement to "third parties" dismissed).  At the motion to dismiss stage, the plaintiff need not identify the precise defamatory statements made by the defendant, plaintiff  "must only provide sufficient notice to [defendant] of the allegations made against [defendant]." *See Mangan v. Corporate Synergies Grp., Inc.*, 834 F.Supp.2d 199, 204 (D.N.J. 2011) (quoting *Cristelli v. Filomena II, Inc.,* Civ. No. 99–2862, 1999 WL 1081290, at *3 (D.N.J. Dec. 1, 1999)).

Plaintiff's claim does not pass muster under Rule 12(b)(6).  Plaintiff's claim rests solely on the conclusory allegation that Defendants BOE President Kazan, Booster Club President O'Mealy, Booster Club VP Casamassina, and Booster Club Secretary D'Agati "intentionally made an improper and false [statement] about Plaintiff so he would be terminated from his coaching position and to poison Plaintiff for other potential coaching positions." (Compl. at ¶ 290.)  Plaintiff fails to identify what "false statements" were made.  (Compl. at ¶¶ 290–294.)  Without further factual detail, Plaintiff asserts that the Booster Club "accused Plaintiff of improperly attempting to influence the election to try and get different people as Booster officers."  (Compl. at ¶ 191.)  This is insufficient.  (Compl. at ¶ 191.)  The Complaint fails to set forth facts demonstrating when, where, by which Defendants, and by what words, written or oral, Plaintiff was defamed.

*Zoneraich,* 212 N.J. Super. 83, 514 A.2d at 62.  Accordingly, Count Eight against Defendants is dismissed.

### IV.    CONCLUSION

For the reasons set forth above, Defendants' partial Motion to Dismiss is **GRANTED Without Prejudice**.  Any amended pleading must be filed within thirty (30) days.  An appropriate order follows.

/s/ Susan D. Wigenton            
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk  
cc:     Parties  
        James B. Clark, III, U.S.M.J.